# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7016 | **DATE** | 1/27/2003 |
| **CASE TITLE** | Ryan Beck & Co., Inc. vs. Campbell, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Campbell's motion for reconsideration (15-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 28 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/27/2003 | |
| GL | courtroom deputy's initials | date mailed notice GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RYAN BECK & CO., INC., )
 )
               Plaintiff, )
 )
v. ) No. 02 C 7016
 )
WILSON A. CAMPBELL, Individually, )
and as TRUSTEE of Wilson A. Campbell )
Rev. Trust, U/A Jan. 14, 1997, )
 )
               Defendant. )

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Defendant Wilson A. Campbell ("Campbell") has filed an action with the dispute resolution section of the National Association of Security Dealers ("NASD") naming, *inter alia*, Plaintiff Ryan Beck & Co., Inc. ("Ryan Beck") as a respondent. On November 26, 2002, we issued an opinion and order granting Ryan Beck's motion for a preliminary injunction. In that opinion we concluded that Ryan Beck would likely prove that it was not the successor in interest to Gruntal & Co., L.L.C. ("Gruntal") and, therefore, was not obliged to arbitrate Campbell's dispute. Defendant Wilson A. Campbell ("Campbell") filed a timely motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. For the following reasons we deny Campbell's motion.

**I. New Evidence**

Campbell claims that new evidence has become available, meriting a reversal of our November 26, 2002 opinion and order.[1] Campbell contends that the new evidence, along with the

---

[1] Because a more detailed description of the facts originally presented to this Court is available in our November 26, 2002 opinion and order, we discuss herein only the new evidence

evidence already presented, establishes that the transaction between Gruntal and Ryan Beck was a *de facto* merger. The new evidence arguably establishes two of the four elements necessary for a *de facto* merger: cessation of ordinary business as soon as possible and continuity of management, personnel, physical location, assets, and general business operations.[2]

With respect to the second factor contributing to a *de facto* merger, the cessation of ordinary business, Campbell offers evidence that on October 29, 2002, Gruntal and its parent company, G. Financial, filed for bankruptcy. In addition, Campbell offers the affidavit of Gruntal chairman and CEO, Robert Rittereiser, and the deposition testimony of Ryan Beck CEO, Ben Plotkin. Mr. Rittereiser's affidavit states that after Gruntal sold substantially all of its assets to Ryan Beck, it ceased acting as a broker dealer and surrendered its broker dealer licenses. Mr. Rittereiser also states that after the asset purchase Gruntal began a wind-down of its business, did not engage in new business opportunities, and did not have significant assets or revenues. Mr. Plotkin testified that he expected that Gruntal would not continue as a broker dealer after the asset purchase because Gruntal management had indicated their intention to initiate a wind-up of the business following the

---

presented by Campbell in its motion for reconsideration. *See Ryan Beck & Co., Inc. v. Campbell*, 2002 WL 31696792 (N.D. Ill. 2002).

[2]For a *de facto* merger to occur, there must be continuity of the successor and predecessor corporation as evidenced by (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operation. *See Lumbard v. Maglia*, 621 F.Supp. 1529, 1535 (S.D.N.Y. 1985). In our November 26, 2002 opinion, we found that the first and second factors weighed against a *de facto* merger while the third factor weighed in favor of a *de facto* merger. We concluded that the fourth factor was neutral.

2

transaction. Mr. Plotkin further testified that the businesses Ryan Beck did not purchase from Gruntal were either closed shortly after the asset purchase or were no longer operated by Gruntal.

Campbell also claims that Mr. Plotkin's deposition revealed new evidence tending to show that there was continuity of management between Gruntal and Ryan Beck, the fourth factor relevant to the *de facto* merger analysis. According to Mr. Plotkin, Ryan Beck hired as a consultant the president of Gruntal's retail brokerage unit, Hank Grottman. Ryan Beck also filled eight senior management[3] positions with former Gruntal employees and retained seventy-five percent of those employees holding middle and lower management positions at Gruntal. Campbell contends that this new evidence, along with the evidence originally presented to this Court, proves that the transaction between Gruntal and Ryan Beck was a *de facto* merger.

**II. Analysis**

A. *Choice of Law*[4]

In deciding which state's substantive law to apply, a court sitting in diversity must apply the forum state's choice of law principles. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313

---

[3] Although the "senior management" at Ryan Beck includes many former Gruntal employees, the upper echelon of management at Ryan Beck, including the Board of Directors, Executive Management Committee, President & Chief Operating Officer, Chief Financial Officer, Executive Vice President, and Chief Risk Management Officer are not former Gruntal employees.

[4] In our November 26, 2002 order, we declined to engage in a choice of law analysis, finding that the laws of New York and Illinois were consistent with regard to the four exceptions to the general rule that corporate successors are not responsible for the liabilities of their predecessors. Although virtually all states recognize these four exceptions, state law varies with respect to the application of these principals. Prior to the introduction of Campbell's new evidence, Ryan Beck clearly did not fit within any of the four exceptions, and these nuances were therefore irrelevant. With the addition of Campbell's new evidence, however, the slight variations in the law from state to state are more important. We therefore conduct a choice of law analysis.

3

U.S. 487 (1941). Illinois has adopted the "most significant contacts" test. *See Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970). Under this test, we must apply the law of the state that has the most significant relationship to the occurrence and the parties with respect to the issue involved. *See id.* In determining the state of the most significant relationship we consider: (a) the place where the injury occurred; (b) the place where the conduct occurred; (c) the domicile, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship of the parties is centered. *See id.*

Applying this test, we find that the State of Illinois has the most significant contacts to the parties and occurrence at issue. First, the alleged injury occurred in Chicago, Illinois. Although Gruntal was headquartered in New York at the time Campbell became a client of the firm, Campbell's account was based at Gruntal's Chicago, Illinois location. Campbell's broker, Reed Badgley, who is responsible for the alleged mishandling of Campbell's account, likewise worked at Gruntal's Chicago branch. Thus, when Campbell's account decreased in value, that injury occurred in Illinois, where both he and his account were located. Likewise, we find that the second factor weighs in favor of Illinois. Because Badgley worked in Illinois, his alleged tortious conduct of disregarding Campbell's investment directives and goals occurred in Illinois.

The third factor, the domiciliary, incorporation, and principal place of business of the parties, does not weigh in favor of either Illinois or New York. Although Gruntal, the brokerage firm for which Badgley worked at the time of the alleged misconduct, has its principal place of business in New York, Gruntal is not a party to the instant suit.[5] As for the parties in this case, Campbell is a domiciliary of Illinois. Ryan Beck is incorporated in Florida and its principal place of business is

---

[5]Gruntal is, however, a party to the arbitration initiated by Campbell.

New Jersey. Finally, we look to the state where the relationship between the parties is centered. Campbell closed its account with Gruntal prior to Ryan Beck's acquisition of Gruntal, and was therefore never a client of Ryan Beck. To the extent there is a relationship between Campbell and Ryan Beck, it exists only through Gruntal. The relationship between Campbell and Gruntal was based in Illinois; Campbell opened his account at Gruntal's Chicago branch and both Campbell and his broker, Badgley, were located in Illinois.[6]

### B. *The de facto merger exception*

Despite the new evidence Campbell presents to buttress its claim that Ryan Beck is the successor in interest to Gruntal, our finding remains that the transaction between Gruntal and Ryan Beck likely did not constitute a *de facto* merger. Campbell readily admits that there was no continuity of ownership throughout the transaction. This failure is fatal to Campbell's claim because Illinois courts have consistently required a continuity of stock ownership in finding successor liability under a *de facto* merger theory. *See Nilsson v. Continental Machine Manufacturing Co.*, 621 N.E.2d 1032, 1035 (Ill. App. Ct. 1993). Indeed, "Illinois courts have held that the most important factor in determining whether a ... *de facto* merger has occurred is identity of ownership of the new and former corporations." *Id.* at 1034; *see also General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) (noting that under Illinois law, a "purchaser of assets will not be liable under the theory of *de facto* merger or mere continuation in the absence

---

[6] Campbell urges this Court to find that New York is the state with the most significant contacts. In support of his argument, Campbell offers evidence of choice of law provisions in the Client Agreement executed between Gruntal and Campbell and the Master Agreement entered into between Gruntal and Ryan Beck. Although Illinois courts enforce most choice of law provisions, neither of these choice of law agreements govern in this case because these agreements are not between Ryan Beck and Campbell, the parties to this suit.

of continuity of ownership"). Thus, even if Campbell's evidence establishes cessation of Gruntal's business and continuity of management, without evidence of continuity of ownership, Campbell cannot succeed in establishing that the transaction was a *de facto* merger.

## II. Conclusion

For the foregoing reasons, Campbell's motion for reconsideration is denied. It is so ordered.

MARVIN E. ASPEN
District Judge

Dated: 1/27/03