# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7016 | **DATE** | 7/17/2003 |
| **CASE TITLE** | Ryan Beck & Co., Inc. vs. Wilson A. Campbell, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Defendant Campbell's motion for reconsideration of our 1/27/02 opinion and order (23-1) is granted in part and denied in part. We amend our 1/27/03 order under FRCP 59(e) Despite these amendments, we deny Campbell's motion to reverse our 1/27/03 order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | JUL 18 2003 | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | 39 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 7/17/2003 |
| GL courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice GL mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Ryan Beck & Co., Inc., | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 02 C 7016 ) |
| Wilson A. CAMPBELL, Individually and as Trustee of the Wilson A. Campbell Rev. Trust, U/A Jan. 14, 1997, | ) ) ) ) ) ) |
| Defendants. | ) |

DOCKETED

JUL 1 8 2003

## MEMORANDUM OPINION AND ORDER

Aspen, District Judge:

Currently before us is Defendant Wilson A. Campbell's ("Campbell") motion for reconsideration of our January 27, 2002 opinion and order. For the following reasons we amend our order but deny Campbell's motion to reverse that order.

Defendant Campbell has filed an action with the dispute resolution section of the National Association of Security Dealers ("NASD") naming, *inter alia*, Plaintiff Ryan Beck & Co., Inc. ("Ryan Beck") as a respondent.[1] On November 26, 2002, we issued an opinion and order granting Ryan Beck's motion for preliminary injunction. In that opinion we concluded that Ryan Beck would likely prove that it was not the successor in interest to Gruntal & Co., LLC ("Gruntal") and, therefore was not obliged to arbitrate Campbell's dispute. Defendant Campbell then filed a timely motion for reconsideration under Rule 59(a) of the Federal Rules of Civil Procedure, arguing that new

---

[1] A detailed description of the facts presented to the Court in available in our opinions of November 26, 2002 and January 27, 2003.

39

information, revealed during discovery, established that the transaction between Ryan Beck and Gruntal was a *de facto* merger, warranting a reversal of our November 26, 2002 order ("Campbell's First Motion to Reconsider"). On January 27, 2003, applying Illinois substantive law, we denied Campbell's motion for reconsideration. Campbell then filed a second motion for reconsideration under FRCP 59(e), arguing that the Court erred in its choice of choice of law analysis and urging reconsideration of its argument under New York law ("Campbell's Second Motion to Reconsider").

*Choice of Law*

In deciding which state's substantive law to apply, a court sitting in diversity must apply the forum state's choice of law principles. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). Illinois has adopted the "most significant contacts" test. *See Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970). Under the principal of depecage, we must "cut[] up a case into individual issues," *Ruiz v. Blentech*, 89 F.3d 320, 324 (7th Cir. 1996), and apply the law of the state that has the most significant relationship to the occurrence and the parties with respect to each issue involved. *See id.* The factors pertinent to the most significant contacts test differ according to the area of substantive law governing the issue and according to the nature of the issue itself. *See id.*

In our January 27, 2003 opinion we erred in conducting one choice of law analysis for all issues in this case. We should have conducted one analysis for issues of successor liability and a separate analysis for issues of tort liability. *See id.* at 326. We therefore revisit this issue and determine that New York law applies for purposes of successor in interest liability. New York has the most significant contacts to the transaction between Gruntal and Ryan Beck. Gruntal's principal

2

place of business was in New York.[2] The transaction in which Ryan Beck acquired certain of Gruntal's assets occurred in New York. Furthermore, the asset purchase agreement executed by Gruntal and Ryan Beck contains a choice of law provision mandating that the agreement be governed by New York law. Although Illinois has the most significant contacts for purposes of the tort analysis, it has no significant contacts to the successor in interest issue.[3]

*Successor in Interest Liability*

In its first motion to reconsider, Campbell argued that new evidence warranted a reversal of our November 26, 2002 order granting Ryan Beck's motion for a preliminary injunction. Campbell contended that this new evidence demonstrates that the transaction between Ryan Beck and Gruntal was a *de facto* merger. It is undisputed that a *de facto* merger is evidenced by four factors: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets and general business operations. *See Lumbard v. Maglia*, 621 F.Supp. 1529, 1535 (S.D.N.Y. 1985).

---

[2]Ryan Beck is a Florida corporation with its principal place of business in New Jersey. Neither party argues that Florida or New Jersey law should be applied.

[3]Ryan Beck goes to great lengths to distinguish and narrow the holding in *Ruiz*. There is no evidence to support Ryan Beck's contention that the Seventh Circuit intended for its holding in *Ruiz* to apply only to the products line exception to the basic rule about successor liability. Ryan Beck correctly notes that we need not conduct a choice of law analysis unless there is actually a difference in the relevant laws of the different states that will affect the outcome of the case. Because we believe such a difference exists between New York and Illinois law with regard to successor liability, a choice of law analysis is necessary.

3

The parties concede that there was no continuity of ownership in the asset purchase agreement executed by Gruntal and Ryan Beck. The parties diverge, however, as to the relevance of this fact. Campbell contends that New York law allows a finding of *de facto* merger without continuity of ownership; Ryan Beck maintains that continuity of ownership is necessary except in certain limited situations such as product liability. Although we admit that the law on this question is somewhat convoluted, *see e.g. Cargo Partners A.G. v. Albatrans Inc.*, 207 F.Supp. 2d 86, 99 (S.D.N.Y. 2002), we agree with Campbell that New York law allows flexibility in assessing the factors of a *de facto* merger and that continuity of ownership, while important to a *de facto* merger analysis, is not an absolute requirement. *See Sweatland v. Park Corp.*, 181 A.D.2d 243, 246 (N.Y. A.D. 1992) (holding that not all of the four factors "are needed to demonstrate a merger; rather these factors are only indicators that tend to show a *de facto* merger") (*citing Menacho v. Adamson United Co.*, 420 F. Supp. 128, 133 (D.N.J. 1976)); *see also Fitzgerald v. Fahnestock*, 286 A.D.2d 573, 574 (N.Y.A.D. 2d 2001)("not all of these elements are necessary to find a *de facto* merger"). Thus, the *Sweatland* court determined that "public policy considerations dictate, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a *de facto* merger."[4] *Id.*

Although we hold that under New York law the lack of continuity of ownership does not absolutely bar a finding that Ryan Beck is the successor in interest to Gruntal, we nonetheless decline to reverse our decision of January 27, 2003. Our holding today is not that Ryan Beck is, in fact, the successor to Gruntal but rather that, despite the lack of continuity of ownership, Ryan Beck may be

---

[4] Ryan Beck argues that this public policy argument applies only in products liability cases. We disagree. The *Sweatland* court discusses "tort liability," a general term that includes but is not limited to products liability cases.

the successor in interest to Gruntal. Indeed, continuity of ownership is an extremely important factor, and its absence in this case weighs heavily against a finding that Ryan Beck is a successor to Gruntal. Also weighing against Gruntal is the fact that, although there has been some continuity of management between Gruntal and Ryan Beck, the upper echelon of management at Ryan Beck does not consist of former Gruntal employees. Ryan Beck, therefore, has still met its burden of showing that it has some likelihood of success on the merits. *See Washington v. Indiana High School Ath. Ass'n*, 181 F.3d 840, 845 (7th Cir. 1999). Even though Ryan Beck's chances of succeeding on the merits have diminished somewhat, we conclude that enjoining Campbell from continuing with the arbitration would "minimize the hardship to the parties pending the ultimate resolution of the law suit," *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1999), and therefore do not reverse our order of January 27, 2003.

*Conclusion*

For the forgoing reasons we amend our January 27, 2003 order under FRCP 59(e). This amendment shall reflect that New York law governs the issue successor liability and that, under New York law, continuity of ownership is not an absolute requirement for successor liability. Despite these amendments, we deny Campbell's motion to reverse our January 27, 2003 order. It is so ordered.

Marvin E. Aspen
District Judge

Dated: 7/17/03